## Louisville & N. R. Co. et al. v. Newell.

Dec. 15, 1944.

66

E. L. Stephens, Herschel Sutton, H. T. Lively and Tye & Siler for appellants.

R. L. Pope and C. B. Upton for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

On May 11, 1943, during a light rain, Julia Newell, then ill and en route from a hospital to her home, was removed from an ambulance by the driver in anticipation that the ambulance which had stalled on a railroad track at a public crossing would be struck by an approaching freight train. The train did not stop in time to avoid a contact between the footboard of the engine and the front of the vehicle, and, as a result, the vehicle was "slewed" around without being overturned or otherwise injured. Julia was then placed on a cot which had been taken from the ambulance and covered with blankets and a coat to protect her from the rain. A few minutes later when it began to rain harder she, on the cot, was put back in the ambulance, and shortly thereafter she was removed to the rear seat of an automobile which had arrived at the scene, and taken to her home. Fifty-one days thereafter she died of miliary, or "galloping", tuberculosis, and this action was instituted by her administrator against the Railroad Company and the owners of the ambulance to recover damages, which the jury fixed at $1200, for her death.

The evidence showed that a "blow-out" in one of its tires had brought the vehicle to a stop within approximately a foot and a half of the nearest rail. The driver and a boy who was assisting him had tried to jack up the vehicle in order to repair or replace the tire, and, failing in that endeavor, had started the engine but had been unable to move the vehicle either forward or backward. From fifteen to twenty-five

minutes had been consumed in these attempts, when, hearing the train approaching about a mile away, the driver and the boy tried to "flag it down" by running a short distance up the track and waving their arms. The removal of the girl from the ambulance had been accomplished in ample time to place her beyond the reach of possible harm from the anticipated collision, and, so far as we are able to determine, she would have been subjected to exactly the same exposure as she underwent had the train stopped before it reached the crossing. Thus it would seem apparent that there was no causal connection between the failure of the engine crew to stop the train before it reached the crossing, and the injury, if any, which the girl sustained by reason of her removal from the ambulance, since the latter event preceded the former and no injury was inflicted on the ambulance which prevented her being promptly returned to it. The driver of the ambulance was probably guilty of actionable negligence, since the girl was his passenger, and even though he may not have been responsible for the breakdown of the vehicle, no reason was shown why he could not sooner have sent for another vehicle to which the girl could have been removed without exposure. However, it is unnecessary to determine whether either of the appellants was guilty of actionable negligence, since the proof was insufficient to show that the girl's death was caused by the exposure or alleged shock.

The decedent, an eighteen year old negress, had undergone an operation at a hospital in Knoxville, Tennessee, in September, 1941. The appendix had ruptured, and the incision would not heal. After a return to that hospital for treatment and a subsequent confinement at her home, she had been taken to a hospital at Jellico, in February, 1943, for another operation, during which one of her ovaries and tubes had been removed. An infection had developed in that wound; and in April, 1943, she had returned to the hospital in Jellico for treatment. She remained in the hospital five weeks, or until May 11, 1943, and was being taken to her home in Packard when the occurrence took place which forms the basis of this litigation. Prior to her removal to the hospital at Jellico, her family physician, Dr. Garfield Howard, had concluded that she was suffering from acute tuberculosis of the lungs of the most virulent and progressive type, which terminates fatally, usually

within a short period; and this disease was the cause of her death. He further testified that the exposure and shock to which she was subjected on May 11th, was not a contributing factor and could not have even hastened her death, unless she had suffered an extreme shock, developed pneumonia, or ruptured a blood vessel, none of which had occurred.

Dr. Carl E. Ausmus, one of the owners of the hospital at Jellico, and the only other physician who testified, stated when introduced as a witness by appellee, that the girl, on her return to the hospital on May 16th, was in a worse condition than when she had left it on May 11th, and that she was ''complaining of great pain in the chest and a high temperature.'' She remained in the hospital on this occasion seven days, and it is apparent from Dr. Ausmus's testimony, a written statement of the girl introduced in evidence, and the testimony of her mother, that she had not contracted pneumonia or ruptured a blood vessel. Dr. Ausmus also testified that the diagnosis of tuberculosis had been confirmed prior to May 11th; and the furtherest he would go toward making out a case for appellee was to state that the exposure hastened her death, and this, in answer to a hypothetical question, which had been objected to because it presupposed the existence of several non-existent factors in connection with the occurrence of May 11th. While in homicide prosecutions it is not a defense to show that the victim was suffering from a fatal disease and that the wound inflicted merely hastened his death, testimony that a negligently inflicted injury merely hastened a death resulting solely from a previously contracted fatal disease is not equivalent to proof that the injury was a proximate cause thereof when neither the extent of the ''hastening'' nor the manner in which the injury operated to produce it is shown. Hence, such testimony is insufficient to sustain a recovery in an action instituted by the personal representative under the authority of Section 241 of the Constitution to recover the damages sustained by the estate through the loss of the life. See Cincinnati, N. O. & T. P. R. Co. v. Perkins' Adm'r, 177 Ky. 88, 197 S. W. 526; 25 C. J. S., Death, sec. 87, p. 1215.

In any event, since the statement of Dr. Ausmus that the death was hastened by the occurrence of May 11th, was in answer to a hypothetical question in which the circumstances were prejudicially exaggerated, it con-

stituted at most a mere scintilla of evidence, wholly insufficient to sustain the verdict in the absence of any testimony that the virulency of the disease from which the decedent was suffering at the time of the occurrence was increased, and in the face of the positive testimony that she developed no other disease or complication.

Hence, the Court should have sustained appellants' motions for directed verdicts.

Judgment reversed.

Whole Court sitting.